MET–Rx USA, INC., MET–Rx Substrate Technology, Inc., A. Scott Connelly, M.D., and Baylor Health Enterprises, Inc., Appellants,

v.

Donald Jonathan SHIPMAN, Appellee.

No. 10–01–082–CV.

Court of Appeals of Texas,
Waco.

Nov. 7, 2001.

Rehearing Overruled Nov. 30, 2001.

---

Charles W. Schwartz, Vinson & Elkins, Houston, Bruce W. Bowman, Jr., Christo-pher W. Carr, Tanya Henderson, Winstead, Sechrest & Minick, P.C., Dallas, David Sibley, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

Stephen Gardner, Law Office of Stephen Gardner, Dallas, Mark S. McQuality, Bragg, Chumlea, McQuality & Smithers, Dallas, John R. MacLean & Dan M. Boulware, MacLean & Boulware, Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Donald Jonathan Shipman filed a class-action suit against MET–Rx USA, Inc., MET–Rx Substrate Technology, Inc., A. Scott Connelly, and Baylor Health Enterprises, Inc. (collectively, "Appellants") for injunctive and declaratory relief under Rule of Civil Procedure 42(b)(2). *See* TEX.R. CIV. P. 42(b)(2). Appellants bring this interlocutory appeal seeking review of the court's order certifying the class. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2001). MET–Rx USA, MET–Rx Substrate Technology, and Scott Connelly (the "MET–Rx Defendants") claim in their first issue that Shipman lacks standing to pursue this suit. Baylor Health Enterprises ("Baylor") challenges Shipman's standing in its ninth issue. Because Shipman's lack of standing is dispositive, we do not address the remainder of the issues raised by Appellants.

## BACKGROUND

Shipman alleges in his Third Amended Petition that he first purchased MET–Rx products in March 1995. He experienced

a "kidney stone attack" in January 1996. "Since that time, he has been hospitalized for kidney problems on numerous occasions, for over 300 days in total." He claims that his kidney problems are caused by the high concentration of protein in the MET–Rx products he consumed. Once he made this association in 1997, he stopped using MET–Rx products. He filed this suit in December 1998.[1]

Shipman claims in his suit that Appellants have misrepresented the safety of MET–Rx products. He contends that Appellants' representations about the safety of MET–Rx products: (1) violate the Deceptive Trade Practices Consumer Protection Act; (2) constitute actionable fraud and misrepresentations; and (3) constitute a breach of express and implied warranties. He seeks declaratory relief to the effect that Appellants' conduct violates these laws, injunctive relief prohibiting Appellants from marketing and distributing MET–Rx products without providing proper warnings, and attorney's fees and costs.

## STANDING

The MET–Rx Defendants in their first issue and Baylor in its ninth issue contend that Shipman does not have standing to pursue this suit. They ask that we reverse the court's class-certification order

1. Shipman has a separate suit against Appellants for personal injury damages pending in Dallas County. Shipman and his co-plaintiffs originally filed the other suit in another Johnson County district court. That court granted the defendants' motion to transfer venue to Dallas County.

2. Appellants requested reversal and remand in their original briefs. By way of supplemental letter briefing and at oral argument, they now take the position that the appropriate disposition would be reversal and rendition in accordance with the opinion of the

and render judgment dismissing Shipman's suit for want of jurisdiction.[2]

### PERTINENT AUTHORITIES

■ "The standing requirement stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision."[3] *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex.2001) (quoting *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993)). The Supreme Court has long interpreted the separation of powers doctrine to prohibit courts from issuing advisory opinions "because such is the function of the executive department." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *accord Texas Ass'n of Bus.*, 852 S.W.2d at 444; *Morrow v. Corbin*, 122 Tex. 553, 557–58, 62 S.W.2d 641, 643–44 (1933). More recently, the Court has concluded that "standing is implicit in the open courts provision" because it "contemplates access to the courts only for those litigants suffering an injury." *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

■ Because standing is a jurisdictional issue, we review a party's standing in the same manner as we would a plea to the jurisdiction. *See Brown*, 53 S.W.3d at 305 n. 3 (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). Thus, we conduct a *de novo* review. *See Mayhew*, 964 S.W.2d at

Supreme Court in *M.D. Anderson Cancer Center v. Novak*. 52 S.W.3d 704, 711 (Tex.2001).

3. In Texas, the separation of powers doctrine arises from article II, § 1 of the Texas Constitution, which divides the powers of government "into three distinct departments." TEX. CONST. art II, § 1. The open courts provision appears in article I, § 13 of the Constitution, which provides in pertinent part, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *Id.* art. I, § 13.

928; *Njuku v. Middleton,* 20 S.W.3d 176, 177 (Tex.App.—Dallas 2000, pet. denied).

▮▮▮ Generally, we look only to the factual allegations of the plaintiff's petition when reviewing a plea to the jurisdiction. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 404–05 (Tex.2000); *Texas Ass'n of Bus.,* 852 S.W.2d at 446. We "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Texas Ass'n of Bus.,* 852 S.W.2d at 446 (quoting *Huston v. Federal Deposit Ins. Corp.,* 663 S.W.2d 126, 129 (Tex.App.—Eastland 1983, writ ref'd n.r.e.)); *accord Brown,* 53 S.W.3d at 305 n. 3. However, we are "not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000); *see also Texas Ass'n of Bus.,* 852 S.W.2d at 446 (court "must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing").

▮▮▮ To establish standing, a plaintiff must show "a distinct injury to the plaintiff and 'a real controversy between the parties, which ... will be actually determined by the judicial declaration sought.'" *Brown,* 53 S.W.3d at 305 (quoting *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 517–18 (Tex.1995)).[4]

Thus, standing involves three distinct inquiries: (1) an injury personal to the plaintiff; (2) which is "fairly traceable to the defendant's allegedly unlawful conduct"; and (3) "which ... will be actually determined by the judicial declaration sought." *See id.* (quoting *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849, 858 (1997)); (*Garcia,* 893 S.W.2d at 517–18).[5] This appeal concerns only the last of these inquiries.

According to federal[6] authorities, a plaintiff lacks standing if his alleged injury is not "likely to be redressed by the requested relief." *Raines,* 521 U.S. at 818, 117 S.Ct. at 2317, 138 L.Ed.2d at 858 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984)). Stated another way, the plaintiff must have "a personal stake in the outcome." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628, 636 (1985) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962)); *TCI Cablevision of Dallas, Inc. v. Owens,* 8 S.W.3d 837, 848 (Tex.App.—Beaumont 2000, pet. dism'd by agr.); *Marburger v. Seminole Pipeline Co.,* 957 S.W.2d 82, 89 n. 11 (Tex.App.—Houston [14th Dist.] 1997, pet. denied).

▮▮▮ These same standing requirements apply to a class action. *See M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d

---

4. The quotation from *Garcia* apparently originates with *Board of Water Engineers v. City of San Antonio. See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993) (quoting *Board of Water Engineers,* 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)).

5. The quotation regarding the defendant's conduct apparently originates with *Allen v. Wright. See Raines v. Byrd,* 521 U.S. 811, 818–19, 117 S.Ct. 2312, 2317, 138 L.Ed.2d

849, 858 (1997) (quoting *Allen,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984)).

6. The Supreme Court of Texas has expressly relied on federal authorities for guidance in resolving standing issues. *See, e.g., Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001); *Texas Ass'n of Bus.,* 852 S.W.2d at 444–45. We do likewise.

811

704, 710 (Tex.2001); *In re M.M.O.*, 981 S.W.2d 72, 81 (Tex.App.—San Antonio 1998, no pet.); *Tarrant County, Tex. Comm'rs Ct. v. Markham*, 779 S.W.2d 872, 876–77 (Tex.App.—Fort Worth 1989, writ denied); *Texas Dep't of Mental Health & Mental Retardation v. Petty*, 778 S.W.2d 156, 164 (Tex.App.—Austin 1989, writ dism'd w.o.j.). Thus, a class plaintiff must first establish individual standing before a court reaches the question of whether that plaintiff is a proper representative of the class under Rule 42. *See Novak*, 52 S.W.3d at 710.

ANALYSIS

■ "The standing inquiry ... 'often turns on the nature and source of the claim asserted.'" *Raines*, 521 U.S. at 818, 117 S.Ct. at 2317, 138 L.Ed.2d at 857 (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, 355 (1975)). Accordingly, we begin our analysis by reviewing the claims asserted by Shipman.

Under Shipman's present pleadings, he seeks declaratory and injunctive relief. He seeks a judicial declaration that Appellants' conduct in marketing and distributing various MET–Rx products (1) violates the Deceptive Trade Practices Consumer Protection Act; (2) constitutes actionable fraud and misrepresentations; and (3) constitutes a breach of express and implied warranties. Shipman also requests a permanent injunction which prohibits Appellants from marketing and distributing MET–Rx products in the future without

"proper" warnings.[7] We start with Shipman's request for injunctive relief.

■ Shipman states in his petition that he "discontinued his use of MET–Rx" in 1997 when he determined that his kidney problems were caused by his use of MET–Rx.[8] "He brings this lawsuit in order to try to prevent others from experiencing the damages he has suffered." At the class certification hearing, he testified that he does not plan to use MET–Rx products in the future. Shipman's disavowal of any intent to use MET–Rx in the future is determinative of his standing to pursue this class action.

The future injunctive relief he seeks will not redress the injuries he allegedly suffered from using MET–Rx in the past. Thus, he lacks standing to seek injunctive relief. *See Raines*, 521 U.S. at 818, 117 S.Ct. at 2317, 138 L.Ed.2d at 858; *Brown*, 53 S.W.3d at 305.

Because Shipman has disavowed any future use of MET–Rx, he will not suffer injuries in the future like those he allegedly suffered in the past. Thus, "any prospective [declaratory] relief [the court] might grant cannot help [him]." *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *see also Perry v. Sheahan*, 222 F.3d 309, 314–15 (7th Cir.2000) (plaintiff lacks standing for prospective declaratory relief absent showing of threatened future injury); *Harris v. City of Houston*, 151 F.3d 186, 191 n. 5 (5th Cir.1998) ("Requests for declaratory relief may sustain a suit only when the claims 'challenge ... some ongo-

7. Shipman also seeks attorney's fees. However, his "claim" for attorney's fees wholly depends upon his standing to pursue the other claims. If Shipman lacks standing to obtain the declaratory and injunctive relief he seeks, then he lacks standing to request attorney's fees.

8. He testified at the class-certification hearing that he last used MET–Rx "somewhere in the middle of 1996."

ing underlying policy' rather than 'merely attack[ing] an isolated . . . action.' ") (quoting *City of Houston v. HUD,* 24 F.3d 1421, 1429 (D.C.Cir.1994)); *Cornett v. Donovan,* 51 F.3d 894, 897 (9th Cir.1995) (former inmate lacks standing to obtain declaratory relief regarding inmates' access to courts); *HUD,* 24 F.3d at 1430 ("if a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the court unable to award relief").[9] For these reasons, Shipman lacks standing to pursue his declaratory relief claim.

Accordingly, we sustain the MET–Rx Defendants' first issue and Baylor's ninth issue.

---

9. The circuit court in the *HUD* case described "three potential outcomes to a request for declaratory relief" "[w]hen a plaintiff's specific claim is moot or otherwise fully resolved." *City of Houston v. HUD,* 24 F.3d 1421, 1429 (D.C.Cir.1994).

> First, if a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits the exception for cases that are "capable of repetition, yet evading review," or falls within the "voluntary cessation" doctrine. Second, if a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the court unable to award relief. Third, as is illustrated by our decisions in *Payne [Enters., Inc. v. U.S.,* 837 F.2d 486 (D.C.Cir.1988)]* and *Better Government, [Ass'n v. Department of State,* 780 F.2d 86 (D.C.Cir.1986)]* if a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy, then declaratory relief may be granted if the claim is ripe for review.

*Id.* at 1429–30 (citations omitted).

---

## CONCLUSION

Shipman lacks standing to pursue his claims for declaratory and injunctive relief. Therefore, the court lacks subject-matter jurisdiction over his class-action lawsuit. *See Novak,* 52 S.W.3d at 711. For this reason, we reverse the court's class certification order and render judgment dismissing Shipman's suit for want of jurisdiction. *Id.*

Regarding the first category, Shipman purports to challenge Appellants' ongoing conduct, yet he lacks standing to do so because he does not intend to use MET–Rx products in the future. Regarding the exceptions noted in the first category, Shipman's claims are not "capable of repetition" because he has disavowed any intent to use MET–Rx in the future. *See Williams v. Lara,* 52 S.W.3d 171, 184–85 (Tex.2001). The federal courts uniformly hold that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 708, 145 L.Ed.2d 610, 632 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152, 159 (1982)). This doctrine necessarily presupposes that the plaintiff is threatened by the defendant's challenged conduct at the time he files suit. Shipman was not.

Because we have already determined that Shipman lacks standing to challenge the manner in which Appellants market and distribute MET–Rx products in the future, the third category does not apply to Shipman's claim.

Rather, Shipman's claims for declaratory relief fall within the second category.